United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8 IN THE UNITED STATES DISTRICT COURT

9 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 SCOTTSDALE INSURANCE COMPANY,        No. C-12-1780 MMC

12            Plaintiff,        **ORDER DENYING INDIVIDUAL**
                                **DEFENDANTS' MOTION TO DISMISS**
13     v.                       **OR STAY; VACATING HEARING**

14 COAPT SYSTEMS, INC., et al.,

15            Defendants.
   _____/

16

17        Before the Court is the "Individual Defendants' Motion to Dismiss Pursuant to Fed.

18 R. Civ. P. 12(b)(1), or, in the Alternative, to Stay this Action," filed June 15, 2012 on behalf

19 of defendants Robert Elson, David Apfelberg, Laureen DeBuono, Thomas Kanar, Dan

20 Grubman, David Barella, Bader Bellashene, Charlotte Copeland, Linda Ruedy, David

21 Goldberg, and Madeline Lyell (collectively, "D&O Defendants").[1]  Plaintiff Scottsdale

22 Insurance Company ("Scottsdale") has filed opposition, to which the D&O Defendants have

23 replied.  Having read and considered the papers filed in support of and in opposition to the

24 motion, the Court deems the matter suitable for decision thereon, VACATES the July 27,

25 2012 hearing, and rules as follows.

26 //

27

28        [1]Each of the moving defendants is a director or officer of defendant Coapt Systems,
   Inc.  (See Compl. ¶ 4; Mot. to Dismiss at 3:5-6.)

**BACKGROUND**

In its complaint, Scottsdale alleges it issued a Business and Management Indemnity Policy to defendant Coapt Systems, Inc. ("Coapt"), and that said policy includes coverage for certain claims filed against Coapt's directors and officers.  (See Compl. ¶ 12.) According to Scottsdale, 58 lawsuits have been filed against Coapt and/or its directors and officers, which actions have been "coordinated and transferred to the San Diego Superior Court as the Coapt Products Systems Cases, JCCP No. 4655."  (See Compl. ¶ 3.) Scottsdale alleges the plaintiffs in the coordinated proceeding ("Underlying Plaintiffs") are patients of physicians who received, and physicians who administered, "injectable dermal fillers" manufactured by Coapt during a "paid clinical study."  (See Compl. ¶ 16.)[2] Scottsdale further alleges the Underlying Plaintiffs seek to recover damages from Coapt and/or its directors and officers for injuries assertedly caused by a "manufacturing defect" in Coapt's fillers (see id.), and seek to "set aside a purportedly fraudulent transfer of Coapt's assets" that allegedly was made with the intent to hinder Coapt's creditors "in collection of their claims" (see Compl. ¶ 17).

Scottsdale alleges that Coapt provided Scottsdale with notice of some of the above-referenced lawsuits (see Compl. ¶ 14), that Scottsdale denied coverage (see Compl. ¶ 19), and that, thereafter, Scottsdale and Coapt's directors and officers have "exchanged correspondence regarding Scottsdale's denial of coverage" (see id.).  Scottsdale seeks a declaration that it has no obligation to provide Coapt or Coapt's directors and officers with coverage.

By the instant motion, the D&O Defendants request the Court decline to hear the instant action for declaratory relief or, alternatively, to stay the action until the underlying coordinated proceeding has been resolved.  Accordingly to the D&O Defendants, a dismissal or stay is appropriate because the resolution of the coverage issues presented in the instant action will overlap with issues presented in the underlying case.

---

[2]The complaint refers to the fillers as "Coapt Gel Products."  (See id.)

1

**DISCUSSION**

2      Scottsdale's claims for declaratory relief are brought pursuant to the Declaratory

3  Judgment Act.  See 28 U.S.C. §§ 2201-02.  The Declaratory Judgment Act does not itself

4  confer federal subject matter jurisdiction; rather, a declaratory judgment plaintiff must

5  establish an independent basis for such jurisdiction.  See Staacke v. United States

6  Secretary of Labor, 841 F.2d 278, 280 (9th Cir. 1988).  Here, Scottsdale alleges the

7  requisite subject matter jurisdiction is predicated on diversity of citizenship (see Compl.

8  ¶¶ 7, 9-11), which allegations the D&O Defendants have not challenged.

9      Where a district court has subject matter jurisdiction over a claim for declaratory

10  relief, the Court may, under certain circumstances, decline to exercise its jurisdiction.  See

11  Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998).  In Brillhart

12  v. Excess Ins. Co. of America, 316 U.S. 491 (1942), the Supreme Court set forth various

13  factors to guide district courts in the exercise of their discretion under the Declaratory

14  Judgment Act, which factors the Ninth Circuit has summarized as follows:

15          The Brillhart factors remain the philosophic touchstone for the district court.
           The district court should avoid needless determination of state law issues; it
16          should discourage litigants from filing declaratory relief actions as a means of
           forum shopping; and it should avoid duplicative litigation.  If there are parallel
17          state proceedings involving the same issues and parties pending at the time
           the federal declaratory action is filed, there is a presumption that the entire
18          suit should be heard in state court.  The pendency of a state court action
           does not, of itself, require a district court to refuse federal declaratory relief.
19          Nonetheless, federal courts should generally decline to entertain reactive
           declaratory actions.
20
           However, there is no presumption in favor of abstention in declaratory actions
21          generally, nor in insurance coverage cases specifically.  We know of no
           authority for the proposition that an insurer is barred from invoking diversity
22          jurisdiction to bring a declaratory judgment action against an insured on an
           issue of coverage.
23
   See Dizol, 133 F.3d at 1225 (internal quotations and citations omitted).
24
        Here, as noted, the Underlying Plaintiffs allege product liability claims and also
25
   challenge the propriety of certain transfers of Coapt's assets.  In their motion to dismiss or
26
   stay, the D&O Defendants state they "agree that coverage is not implicated under the
27
   Scottsdale policy for the product liability claims," but assert they are entitled to coverage
28

3

1  because of "the claims for fraudulent transfer of assets."  (See Mot. to Dismiss at 3:14-17.)

2  Further, the D&O Defendants argue, the Court should decline to exercise its jurisdiction

3  over the parties' dispute with respect to coverage of the fraudulent transfer claims because,

4  according to the D&O Defendants, the Court will be required to determine whether, "in

5  making the decision to transfer assets, the D&O Defendants were seeking to protect

6  themselves from liability."  (See id. at 4:1-2.)  In so arguing, the D&O Defendants

7  essentially take the position that the Court cannot decide the issue of coverage for the

8  underlying claims until those claims have been resolved.  The Court disagrees.

9  Under California law,[3] "an insurer has a duty to defend an insured if it becomes

10  aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage

11  under the insuring agreement."  See Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 19

12  (1995).  Further, "because current [California] pleading rules liberally allow amendment," an

13  insured "is entitled to a defense . . .  if the complaint might be amended to give rise to a

14  liability that would be covered under the policy."  See Montrose Chemical Corp. v. Superior

15  Court, 6 Cal. 4th 287, 296, 299 (1993).  In short, an insurer has a duty to defend unless

16  "the third party complaint can by no conceivable theory raise a single issue which could

17  bring it within the policy coverage."  See Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 n.15

18  (1966).

19  Here, Scottsdale, in its opposition, sets forth its theory as to why coverage is

20  unavailable, specifically, that the fraudulent transfer claims as pleaded are wholly

21  derivative of uncovered product liability claims, and that, as a matter of California law,

22  where a claim is wholly derivative of an uncovered claim, no coverage is available for the

23  derivative claim.  In their reply, the D&O Defendants set forth their theory as to why

24  coverage exists, specifically, that the allegations made by the Underlying Plaintiffs

25  "potentially support causes of action for fraudulent transfer and breach of fiduciary duties

26  separate and apart from the allegations arising from Coapt's activities in connection with

27  _____

28  [3]With respect to the issue of coverage, both parties rely exclusively on California law.

4

1   the clinical study of its gel products." (See Reply at 7:3-7.)  In other words, the D&O

2   Defendants dispute Scottsdale's contention that the fraudulent transfer claims are wholly

3   derivative of uncovered claims.

4          The D&O Defendants fail to explain why, in light of any policy language or

5   allegations made by any of the Underlying Plaintiffs, such coverage issue cannot be

6   resolved without a determination as to whether the transfers were in fact made with the

7   intent to deprive the Underlying Plaintiffs of their ability to collect a judgment.  Nor have the

8   D&O Defendants cited to any case supporting their argument, and, indeed, the relevant

9   authority supports a finding to the contrary.  In particular, in order to determine the issue of

10  coverage, the Court will be "comparing the allegations of the [underlying] complaint with the

11  terms of the policy." See Waller, 11 Cal. 4th at 26-27.  Any such comparison will not

12  require a determination of the issues in dispute in the underlying coordinated case.

13  Consequently, the D&O Defendants have failed to show the Court should not exercise its

14  jurisdiction over Scottsdale's claims for declaratory relief, and, accordingly, the instant

15  motion will be denied.

                              **CONCLUSION**

17         For the reasons stated above, the D&O Defendants' motion to dismiss or,

18  alternatively, to stay is hereby DENIED.

19         **IT IS SO ORDERED.**

20

21  Dated:  July 24, 2012

22                                          MAXINE M. CHESNEY
                                            United States District Judge
23

24

25

26

27

28

                                    5