1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  SCOTTSDALE INSURANCE COMPANY,          No. C-12-1780 MMC

12          Plaintiff,                     **ORDER GRANTING DEFENDANTS/**
                                           **COUNTERCLAIMANTS' MOTION FOR**
13      v.                                 **PARTIAL SUMMARY JUDGMENT**

14  COAPT SYSTEMS, INC., et al.,

15          Defendants.
    _____/

16

17          Before the Court is the Motion for Partial Summary Judgment, filed April 15, 2013,

18  by defendants/counterclaimants Tom Kanar, Linda Ruedy, Laureen DeBuono, David

19  Apfelberg, David Goldberg, David Barella, Madeline Lyell, Bader Bellahsene, Dan

20  Grubman, Charlotte Copeland, Robert Elson, Lowell Sears, and John Kraczkowsky

21  (collectively, "Individual Insureds").  Plaintiff Scottsdale Insurance Company ("Scottsdale")

22  has filed opposition, to which the Individual Insureds have replied.  Having read and

23  considered the papers filed in support of and in opposition to the motion, the Court rules as

24  follows.[1]

25                              **BACKGROUND**

26          The following facts are undisputed.

27          The Individual Insureds are "former officers, directors, employees and/or advisory

28  _____
                [1]By order filed May 29, 2013, the Court took the matter under submission.

United States District Court

For the Northern District of California

board members" of Coapt Systems, Inc. ("Coapt"). (See Kanar Decl. ¶ 5.) Coapt, which is "presently insolvent and no longer in business," was a "medical device company engaged in the design, development, manufacture, and marketing of bio absorbable facial implants for use in cosmetic surgery procedures." (See id. ¶¶ 4, 11.) "Commencing in 2010 and continuing through May 2012," Coapt and the Individual Insurers were named as defendants in "over sixty lawsuits alleging various damages caused by Coapt's allegedly defective products and alleged fraudulent transfer of assets" ("the Underlying Lawsuits"). (See id. ¶¶ 2, 7.) As of April 2, 2013, twenty-one of said lawsuits remain pending, each in the Superior Court of California, in and for the County of San Diego. (See id. ¶ 7.)[2]

Scottsdale issued to Coapt a "Business and Management Indemnity Policy" ("the Policy"), effective December 14, 2009 to December 14, 2010, in which it agreed to pay certain types of "Loss" incurred by the "Directors and Officers" of Coapt by reason of certain "Claim[s]." (See id. Ex. A at EKS-P-1, § A.1.)[3] On December 14, 2010, Coapt sent a letter to Scottsdale, stating therein it was giving Scottsdale notice of the filing of some of the complaints comprising the Underlying Lawsuits (see id. ¶ 9, Ex. B); Coapt later gave Scottsdale notice of additional complaints comprising the Underlying Lawsuits (see id. Ex. D, first page). By letters dated March 7, 2011 and June 14, 2011, Scottsdale denied coverage for the Underlying Lawsuits. (See id. Ex. D.)

On April 10, 2012, Scottsdale filed its complaint in the instant action, seeking, in Counts I and II, a declaration that "there is no defense . . . coverage for Coapt and its Directors and Officers for the [Underlying] Lawsuits under the Policy." (See Compl. ¶¶ 25,

---

[2]The Individual Insureds' request the Court take judicial notice of the complaints filed in the Underlying Lawsuits. No opposition having been filed and good cause appearing, the request is hereby GRANTED.

[3]The policy defines "Directors and Officers" to include "a duly elected or appointed director, officer, or similar executive of [Coapt], . . . any member of the management board of [Coapt]," and "a person who was, is or shall become a full-time or part-time employee of [Coapt]" (see id. Ex. A at EKS-P-1, § B.4), as well as a "member of the Scientific or Advisory Board of [Coapt] that is indemnified by [Coapt] pursuant to a written indemnification agreement" (see id. Ex. A at EKS-19). The Individual Insureds are "all former officers, directors, employees and/or advisory board members of Coapt." (See id. ¶ 5.)

33.)  On April 5, 2013, the Individual Insureds filed an "Answer to Scottsdale's Complaint

. . . [and] Counterclaims," in which, in the third claim for relief, titled "Third Claim for Relief

(Declaratory Relief)" (<u>see</u> Answer at 15:21-22), the Individual Insureds seek a declaration

that "the Policy affords coverage for the Underlying Lawsuits and specifically requires

Scottsdale to pay defense costs incurred by the Individual Insureds in the Underlying

Lawsuits" (<u>see</u> <u>id.</u> at 16:14-16).

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant

summary judgment if the movant shows that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P.

56(a).

The Supreme Court's 1986 "trilogy" of <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986),

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), and <u>Matsushita Electric Industrial Co.</u>

<u>v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986), requires that a party seeking summary

judgment show the absence of a genuine issue of material fact.  Once the moving party

has done so, the nonmoving party must "go beyond the pleadings and by [its] own

affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial." <u>See</u> <u>Celotex</u>, 477

U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

its burden under Rule 56[ ], its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  "If the

[opposing party's] evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." <u>Liberty Lobby</u>, 477 U.S. at 249-50 (citations omitted).

"[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

most favorable to the party opposing the motion." <u>See</u> <u>Matsushita</u>, 475 U.S. at 587

(internal quotation and citation omitted).

//

//

3

**DISCUSSION**

By the instant motion, the Individual Insureds seek a judgment that Scottsdale "owes a duty to pay defense costs incurred by the Individual Insureds in the twenty-one lawsuits underlying this action that are still pending."  (See Defs.' Mot., filed April 5, 2013, at 1:4-14.) Of the twenty-one Underlying Lawsuits, nineteen were filed by persons, described by both parties herein as "patients," who allege they incurred personal injuries as a result of using defective "dermal fillers" manufactured and sold by Coapt (see, e.g., Defs.' Req. for Judicial Notice Ex. A ¶¶ 2, 28, 30), one action was filed by a physician who alleges he incurred damages, including impairment of his professional reputation as a result of his having used defective Coapt dermal fillers in treating his patients (see id. Ex. E ¶¶ 2, 28, 51), and the remaining action was filed by a physician and his wife, who was one of his patients (see id. Ex. M).  Each of the underlying plaintiffs, in addition to alleging injuries caused by use of the dermal fillers, alleges the Individual Insureds transferred Coapt's assets to other companies "with an actual intent to hinder, delay or defraud Coapt, Inc.'s then and future creditors" (see, e.g., id. Ex. A ¶¶ 181-83; see also Kanar Decl. ¶ 8), and each seeks as a remedy an award of monetary damages and injunctive relief (see, e.g., Defs.' Req. for Judicial Notice Ex. A at 60:21-25, 61:8-62:3).

**A.  Policy Terms**

The Policy contains three "Insuring Clauses," the first of which reads as follows:

> The Insurer shall pay the Loss of the Directors and Officers for which the Directors and Officers are not indemnified by [Coapt] and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period or, if elected, the Extended Period, and reported to the Insurer pursuant to Section E.1 herein, for any Wrongful Act taking place prior to the end of the Policy Period.

(See Kanar Decl. Ex. A at EKS-P-1, § A.1.)

"Loss" is defined in the Policy as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges, and Expenses incurred by Directors and Officers under Insuring Clause[ ] 1" (see id. Ex. A at EKS-P-1 § B.7), but "does not include" "punitive or exemplary damages" or "the cost of any remedial,

4

1    preventative or other non-monetary relief" (see id. Ex. A at EKS-P-1, §§ B.7.c, B.7.d.).

2        "Costs, Charges, and Expenses" are defined in the Policy as "reasonable and

3    necessary legal costs, charges, fees and expenses incurred by any of the Insureds in

4    defending Claims."  (See id. Ex. A at EKS-P-1 § B.3.)

5        "Claim" is defined in the Policy as, inter alia, "a civil proceeding against any Insured

6    seeking monetary damages or non-monetary or injunctive relief, commenced by the service

7    of a complaint or similar pleading."  (See id. Ex. A at EKS-P-1, § B.1.c.)

8        "Wrongful Act" is defined in the Policy as, inter alia, "any actual or alleged error,

9    omission, misleading statement, misstatement, neglect, breach of duty or act allegedly

10   committed or attempted by . . . any of the Directors and Officers, while acting in their

11   capacity as such, or any matter claimed against any Director and Officer solely by reason

12   of his or her serving in such capacity."  (See id. Ex. A at EKS-P-1, § B.9.)

13       The Policy provides that "[i]t shall be the duty of the Insureds and not the duty of

14   [Scottsdale] to defend any [covered] Claim" (see id. Ex. A at EKS-86 ("Endorsement No.

15   20"), § F.1), and that Scottsdale "shall, on a quarterly basis, advance on behalf of the

16   Insureds covered Costs, Charges and Expenses, which the Insureds have incurred in

17   connection with Claims made against them, prior to disposition of such Claims" (see id. Ex.

18   A at EKS-86, § F.6).[4]

19       The Policy, however, contains a number of exclusions.  In particular, and as

20   discussed in greater detail below, the Policy provides that Scottsdale "shall not be liable for

21   Loss under [the Policy] on account of any Claim alleging, based upon, arising out of,

22   attributable to, directly or indirectly resulting from, in consequence of, or in any way

23   involving the rendering or failing to render professional services" (see id. Ex. A at EKS-

24   165), or "on account of any Claim . . . for actual or alleged bodily injury" (see id. Ex. A at

25   EKS-P-1, § C.1.a.).

26   ─────────────────────

27       [4]The Policy also provides that "the Insureds shall have the right to tender the
     defense of a covered Claim to [Scottsdale]."  (See id. Ex. A at EKS-86, § F.2.)  The
28   Individual Insureds do not contend they have exercised such right; rather, as noted above,
     they seek a finding that Scottsdale owes them a duty to pay their costs of defense.

1

**B.  Analysis**

2       Under California law,[5] the insured party "bears the burden of establishing [the

3  insurer's] obligation to pay the [insured's] defense costs under the policy."  See Olympic

4  Club v. Those Interested Underwriters, 991 F.2d 497, 502 (9th Cir. 1993).  Specifically, the

5  insured's "burden is to show that the [underlying] complaint potentially seeks damages

6  within the coverage of the policy."  See id. at 503.  The insurer, however, has the burden to

7  show that a claim "falls within an exclusionary clause."  See id. at 502.

8       The Individual Insureds contend the reputational injury claims alleged by the two

9  underlying plaintiff physicians and the fraudulent conveyance claims alleged by each of the

10  underlying plaintiffs are covered claims.  As discussed below, the Court finds said claims

11  are covered by the above-referenced first insuring clause of the Policy and, contrary to

12  Scottsdale's arguments, do not fall within an exclusionary clause.

13       **1.  Insuring Clause**

14       The underlying plaintiff physicians allege the Individual Insureds promoted Coapt's

15  allegedly defective products for use by physicians but failed to advise of known "serious

16  adverse effects," and that the physicians' professional reputations were damaged as a

17  result of their having used those products on their patients.  (See Defs.' Req. for Judicial

18  Notice Ex. E ¶¶ 29, 51, Ex. M ¶¶ 29, 68.)  Additionally, all of the underlying plaintiffs allege

19  the Individual Insureds, after obtaining knowledge of the products' adverse effects and,

20  further, after four complaints alleging personal injuries had been filed against Coapt,

21  transferred Coapt's assets to other companies to "hinder, delay or defraud" the underlying

22  plaintiffs "in the collection of their claims" (see, e.g., id. Ex. A ¶¶ 177-83). The Individual

23  Insureds offer evidence, undisputed by Scottsdale, that each has incurred attorneys' fees

24  and costs to defend against the allegations made in the Underlying Lawsuits.  (See Kanar

25  Decl. ¶ 12).

26  //

27  _____

28       [5]With respect to the issue of coverage, both parties rely exclusively on California law.

6

1    In light of the above, it is undisputed that the Individual Insureds have incurred a

2  "Loss," specifically, "legal costs" (see id. Ex. A at EKS-P-1, §§ B.3.a., B.7), "by reason of a

3  Claim," specifically, the Underlying Lawsuits in which the plaintiffs seek "monetary

4  damages or non-monetary or injunctive relief" (see id. Ex. A at EKS-P-1, § B.1.c.), for

5  "Wrongful Acts" allegedly committed by the Individual Insureds, specifically, with respect to

6  the underlying plaintiff physicians, an "error, omission, misleading statement,

7  misstatement, [or] neglect" (see id. Ex. A EKS-P-1, § B.9), and, with respect to all

8  underlying plaintiffs, a "breach of duty or act" committed by "the Directors and Officers,

9  while acting in their capacity as such" (see id.).  Lastly, because Coapt is "presently

10  insolvent" and its assets have been "transfer[red]" to other entities (see id. ¶¶ 4, 11), it is

11  undisputed that Coapt cannot "indemnify" the Individual Insureds for any "Loss" (see id. Ex.

12  A at EKS-P-1, § A.1.).

13    Consequently, the Court finds the underlying plaintiff physicians' reputational injury

14  claims and all of the underlying plaintiffs' fraudulent conveyance claims fall within the scope

15  of the first insuring clause of the Policy.  Scottsdale does not argue to the contrary, but,

16  rather, contends coverage for any loss resulting from said claims is unavailable in light of

17  two exclusions set forth in the Policy.  The Court next turns to the exclusions.

18    **2. Exclusionary Clauses**

19    Exclusionary clauses in an insurance policy are "interpreted narrowly against the

20  insurer."  See MacKinnon v. Truck Ins. Exchange, 31 Cal. 4th 635, 648 (2003) (internal

21  quotation and citation omitted).  "[A]ny exception to the performance of the basic underlying

22  obligation must be so stated as clearly to apprise the insured of its effect."  Id. (internal

23  quotation and citation omitted).  Further, even where an exclusionary clause could

24  reasonably be interpreted to bar coverage, courts must make a "finding of coverage so long

25  as there is any other reasonable interpretation under which recovery would be permitted."

26  See id. at 655.  In other words, the insurer must establish that "its interpretation [of an

27  exclusionary clause] is the only reasonable one."  See id.

28    Here, as noted, Scottsdale relies on two exclusionary clauses.  As discussed below,

the Court finds neither clause applies to the reputational injury or fraudulent conveyance

claims brought in the Underlying Lawsuits.

### a. Professional Services Exclusion

Scottsdale argues the reputational injury and fraudulent conveyance claims fall

within the "Professional Services Exclusion," which reads in full as follows:

> Insurer shall not be liable for Loss under this Coverage Section on account of
> any Claim alleging, based upon, arising out of, attributable to, directly or
> indirectly resulting from, in consequence of, or in any way involving the
> rendering [of] or failing to render professional services, provided, however,
> this exclusion shall not apply to any Claim(s) brought by a securities holder of
> [Coapt] in their capacity as such.

(See Kanar Decl. Ex. A at EKS-165 (04/08).)

The term "Professional Services," as used in insurance policies, means a service

"arising out of a vocation, calling, occupation, or employment involving specialized

knowledge, labor, or skill, and the labor or skill involved is predominantly mental or

intellectual, rather than physical or manual."  See Tradewinds Escrow, Inc. v. Truck Ins.

Exchange, 97 Cal. App. 4th 704, 713 (2002) (holding where underlying alleged wrongful

acts "were committed during the performance of professional services, namely, the

rendering of escrow services," coverage was excluded by "professional services exclusion"

in policy); see also PMI Mortgage Ins. Co. v. American Int'l Specialty Lines Ins. Co., 394

F.3d 761, 763, 768 (9th Cir. 2005) (applying same definition).

Here, Scottsdale asserts the reputational injury and fraudulent conveyance claims

fall within the Professional Services Exclusion because, it argues, "Coapt was involved in

the manufacture, marketing, and sale of pharmaceutical products."  (See Pl.'s Opp., filed

April 26, 2013, at 17:22-23.)  More specifically, relying on Impac Mortgage Holdings Inc. v.

Houston Casualty Co., 2013 WL 792790 (C.D. Cal. 2013), Scottsdale argues "marketing

and delivering product samples to physicians" constitute the rendering of professional

services (see Pl.'s Opp at 18:1-3).

Impac concerned a "Professional Services Liability polic[y]," which provided

coverage for losses incurred as a result of claims alleging negligence "in the performance

of or failure to perform professional services for others in the Insured's Profession." <u>See</u> <u>Impac Mortgage Holdings</u>, 2013 WL 792790, at *1-2.  The underlying plaintiffs, investors in mortgages funded, sold, and securitized by the insureds, alleged that the insureds, in seeking investors, had made false statements in documents describing the investments. <u>See</u> <u>id.</u> at *3.  The district court, noting the policy specifically defined the insured's "Profession" as "Mortgage Banker/Mortgage Broker," <u>see</u> <u>id.</u> at *2, found the underlying claims fell within the insuring clause, further noting "liability arising out of mortgage securitization is a risk inherent in the practice of the profession of mortgage banker/broker," <u>see</u> <u>id.</u> at *8.

Nothing in the reasoning set forth in <u>Impac</u> implies a finding that all sales and marketing activities constitute professional services, nor does Scottsdale cite to any authority holding a business engaged in the sale and marketing of products used by professionals is, by reason of such sales activity, itself rendering "professional services." Although courts have recognized that a business that sells products can render "professional services" ancillary to the sale of a product, <u>see</u>, <u>e.g.</u>, <u>Hollingsworth v. Commercial Union Ins. Co.</u>, 208 Cal. App. 3d 800, 808 (1989) (holding employees of "retail cosmetics store" performed "professional service" when they pierced ears of customers who had purchased earrings at store), Scottsdale points to no allegation in the Underlying Lawsuits suggesting that any of the Individual Insureds engaged in any activity that has been held to be, or can be considered analogous to, the provision of professional services, as opposed to ordinary commerce.

Accordingly, the Court finds the Professional Services Exclusion does not apply.

### b. Bodily Injury Exclusion

Scottsdale argues the fraudulent conveyance claims alleged by the underlying plaintiff patients fall within an exclusion barring coverage for losses incurred as a result of claims "for actual or alleged bodily injury" ("Bodily Injury Exclusion").[6]  The Bodily Injury

---

[6]Scottsdale does not argue that the underlying plaintiff physicians' reputational injury and fraudulent conveyance claims fall within the Bodily Injury Exclusion.

1    Exclusion reads as follows:

2        Insurer shall not be liable for Loss under this Coverage Section on account of
         any Claim
3
         a.    for actual or alleged bodily injury, sickness, disease, death, false
4              imprisonment, assault, battery, mental anguish, emotional
               distress, invasion of privacy of any person, or damage to or
5              destruction of any tangible or intangible property including loss
               of use thereof, whether or not such property is physically
6              injured;

7    (See Kanar Decl. Ex. A at EKS-P-1 (04/08)) (emphasis added).

8         The Individual Insureds argue that a fraudulent conveyance claim, as a substantive

9    matter, is not a claim "for actual or alleged bodily injury" (see id.), and, consequently, does

10   not fall within the Bodily Injury Exclusion.

11        Under California law, "[a] fraudulent conveyance is a transfer by the debtor of

12   property to a third person undertaken with the intent to prevent a creditor from reaching that

13   interest to satisfy its claim."  See Yaesu Electronics Corp. v. Tamura, 28 Cal. App. 4th 8, 13

14   (1994).  A creditor is "injured" by a transfer of the debtor's assets where "the transfer puts

15   beyond [the creditor's] reach property [the creditor] otherwise would be able to subject to

16   the payment of [the] debt."  See Mehrtash v. Mehrtash, 93 Cal. App. 4th 75, 80 (2001)

17   (internal quotation and citation omitted).  In other words, the injury caused by a fraudulent

18   transfer of assets is economic in nature.

19        In its opposition, Scottsdale does not, at least explicitly, assert that the underlying

20   plaintiff patients' fraudulent conveyance claims are claims "for actual or alleged bodily

21   injury," but, rather, that a claim derivative of an excluded claim is itself excluded.  More

22   specifically, relying on Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1 (1995), Scottsdale

23   contends the Policy should be interpreted as excluding coverage for claims "derivative" of

24   bodily injury claims, and characterizes the fraudulent conveyance claims alleged by the

25   underlying plaintiff patients as "derivative" of their claims for personal injury.  (See Pl.'s

26   Opp. at 11:9, 16-18.)

27        In Waller, the insureds were insured under a policy in which the insurer agreed to

28   pay the following: "all damages which the insured becomes legally obligated to pay

                                                  10

because of . . . bodily injury to any person, and . . . damage to property . . . to which this

insurance applies, caused by an occurrence." See Waller, 11 Cal. 4th at 19 (alterations in

original). The underlying plaintiff, who was a minority shareholder and corporate officer,

alleged the insureds had engaged in "mismanagement" of the corporation and in "persistent

unfairness," including having "demoted" him. See id. at 11-12. The insureds contended

the insurer owed a duty to defend because the underlying plaintiff had alleged he had

"suffered humiliation, mental anguish, and emotional and physical distress." See id. at 12,

15-16. The California Supreme Court, observing that the underlying plaintiff had alleged

defendants' conduct "resulted in financial detriment," which detriment "was the reason he

suffered 'humiliation, mental anguish, and emotional and physical distress,'" found the

underlying plaintiff did not allege an "occurrence" within the meaning of the policy, which it

interpreted to mean "a noneconomic act causing either emotional distress or bodily injury."

See id. at 26. In other words, "the derivative emotional distress damages sought by [the

underlying plaintiff] for the [insureds'] business torts were not covered because they flowed

from . . . uncovered acts." See id. at 15-16.

Waller is distinguishable on its facts from the instant case. In Waller, the insureds

allegedly engaged in "intentional business torts" causing economic loss, which loss in turn

caused emotional and physical distress. In other words, the claimed emotional and

physical distress directly resulted from, i.e., were derivative of, an uncovered economic

loss. Here, by contrast, the underlying plaintiff patients allege the Individual Insureds

engaged in two separate and distinct torts, each causing a different injury, specifically,

(1) the sale of a defective product, which product caused bodily injury, and (2) the transfer

of corporate assets with the intent to defraud creditors, which transfer, upon entry of a

judgment in favor of the underlying plaintiffs, will cause economic loss.[7]

---

[7]Indeed, although each of the underlying plaintiffs has elected to allege in a single complaint both personal injury and fraudulent conveyance claims, they could have waited until after obtaining a judgment and then challenged the transfer of assets in a later action, in which the sole conduct at issue would be the Individual Insureds' transfer of assets. See, e.g., Yaesu Electronics Corp., 28 Cal. App. 4th at 11, 14-15 (holding, in context of action contesting transfer of assets filed by creditor who had earlier obtained judgment on

1    Moreover, <u>Waller</u> was concerned with interpreting the language of the policy at issue

2    therein, specifically, the word "occurrence," not with establishing a general legal principle

3    untethered to the language of that particular policy.  In contrast to the clause discussed in

4    <u>Waller</u>, the clause under consideration herein is contained in an exclusion.  Further, the

5    clause here at issue only excludes loss on account of a claim "<u>for</u> actual or alleged bodily

6    injury."  (<u>See</u> Kanar Decl. Ex. A at EKS-P-1 (04/08) (emphasis added).)  Had Scottsdale

7    sought to exclude losses caused by claims that, although not claims for bodily injury, bear

8    some relationship to a claim for bodily injury, it could have used broader language; for

9    example, the policy could have excluded losses on account of claims "arising from" or

10   "arising out of" bodily injury.  <u>See</u> <u>Continental Casualty Co. v. City of Richmond</u>, 763 F.2d

11   1076, 1079-81 (9th Cir. 1985) (noting "California courts consistently have adopted broad

12   definitions of 'arising from' and 'arising out of'" as used in exclusionary clauses; holding,

13   where policy excluded loss resulting from claim "arising directly or consequentially from

14   bodily injury," underlying claim "need[ed] [to] bear only an incidental relationship to the

15   injury to come within the exclusionary clause"); <u>see also</u> <u>MacKinnon</u>, 31 Cal. 4th at 648

16   (holding "burden rests upon the insurer to phrase exceptions and exclusions in clear and

17   unmistakeable language").  Here, Scottsdale knew how to use such broader language and,

18   indeed, did so in the Professional Services Exclusion.  (<u>See</u> Kanar Decl. Ex. A at EKS-165

19   (04/08) (excluding loss resulting from claim "alleging, based upon, arising out of,

20   attributable to, directly or indirectly resulting from, in consequence of, or in any way

21   involving the rendering or failing to render professional services").)

22   In sum, given the nature of the conduct alleged to have directly caused the subject

23   economic loss, specifically, a business tort, and given the narrow language of the subject

24   exclusion, the Court finds the Bodily Injury Exclusion is not applicable.

25   //

26

27   fraud claims, debtor's transfer of certain assets made prior to entry of judgment was
     properly set aside where evidence established debtor's "purpose" was to "conceal" such
28   assets from creditor).

1  **C.  Declaratory Relief**

2          Under the Policy, Scottsdale is obligated to pay the defense costs incurred by the

3  Individual Insureds by reason of covered claims, which claims here, as discussed above,

4  are the reputational injury claims alleged by the two underlying plaintiff physicians and the

5  fraudulent conveyance claims alleged by all underlying plaintiffs.  Consequently, to the

6  extent Scottsdale's complaint seeks a declaration that it owes no such duty, and to the

7  extent the Individual Insureds' counterclaims seek a declaration that Scottsdale owes such

8  a duty, the Individual Insureds are entitled to judgment in their favor, and, in accordance

9  therewith, Scottsdale will be directed to comply with its obligations as set forth in

10  Endorsement No. 20 in the Policy.

11                                  **CONCLUSION**

12          For the reasons stated above, the Individual Insureds' motion for partial summary

13  judgment is hereby GRANTED, as follows:

14          1.  To the extent Scottsdale, in Counts I and II, seeks a declaration that Scottsdale

15  owes no duty to pay the defense costs incurred by reason of the above-identified covered

16  claims, specifically, the underlying plaintiffs' reputational injury and fraudulent conveyance

17  claims, the Individual Insureds' motion is GRANTED.

18          2.  To the extent the Individual Insureds, in their Third Claim for Relief, seek a

19  declaration that the Policy requires Scottsdale to pay their defense costs incurred by

20  reason of the above-identified covered claims, the Individual Insureds' motion is

21  GRANTED, and Scottsdale is hereby DIRECTED to comply with its obligation to pay

22  defense costs in accordance with Endorsement No. 20 in the Policy.

23          **IT IS SO ORDERED.**

24

25  Dated:  June 18, 2013

26                                                    MAXINE M. CHESNEY
                                                      United States District Judge

27

28

                                          13